## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,** | | |
| **Plaintiff,** | | **8:15CV299** |
| **vs.** | | |
| **NORFOLK COUNTRY INN, L.L.C., ROBERT L. PAGAN, AND MICHAEL WIESELER,** | | **ORDER** |
| **Defendants.** | | |

This matter is before the Court on the Motion to Appoint Receiver (Filing No. 10) filed by Plaintiff U.S. Bank National Association (the "Bank").   The parties have represented to the Court that they agree to the appointment of a receiver of the rights and interests of defendant Norfolk Country Inn L.L.C., ("Norfolk"), in and to the "Collateral" (set forth on Exhibit A attached to this Order) and the "Receipts" (set forth on Exhibit B attached to this Order and as defined in the Complaint (Filing No. 1)) (the Collateral and the Receipts are collectively referred in this Order as the "Property"). The parties agree that the Court may enter an order in which the receiver shall take possession and control of the Property; collect the Receipts; protect the Property from further loss and waste, market the Property for sale, and if a buyer is identified, seek this Court's approval to consummate the sale.

The parties have submitted a joint proposed order to the Court and have represented that the hearing, set for September 28, 2015, at 10:00 a.m. is no longer necessary upon the Court's entry of this Order.  The Court has considered the record in this case, including the allegations of the Complaint (Filing No. 1), the Motion (Filing No. 10) and evidence submitted in support (Filing No. 12), the exhibits, statements of

counsel, and applicable law.  The Court concludes that for good cause shown, and pursuant to Fed. R. Civ. P. 66, the Motion to Appoint Receiver (Filing No. 10) will be granted.  Accordingly,

IT IS ORDERED:

1. **Motion Granted.**  The Motion for Appointment of Receiver (Filing No. 10) is granted.

2. **Receiver Appointment.**  Great American Hotel Group Inc., or a special purpose entity formed by it to act as receiver, is appointed receiver (the "Receiver").

3. **Receiver to Take Possession and Protect.**  The Receiver is hereby authorized and directed to take possession and control of the Property; to operate the Property and in particular to collect the Receipts; to protect the Property from loss and waste; to exercise all powers and rights permitted by law and the loan documents governing the lending relationship between the Bank and Norfolk ("Loan Documents"). In addition, the Receiver is authorized to (a) market the Property for sale, (b) identify a buyer, and (c) then seek approval of the Court to consummate such sale (collectively the "Sale").

4. **Pre-Receivership Bills.**  The Receiver shall have no responsibility for payment of any utility bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by, or for the benefit of, Norfolk, and which came due prior to the Receiver taking possession of the Property.  No utility or other vendor may terminate service or the provision of other goods or services to the Property as a result of the non-payment of pre-receivership obligations without prior order of this Court.

5.  **Collection and Use of Receipts / Bank Accounts.**

a.  The Receiver is authorized to receive, collect, use and hold the Receipts in the operation of the Property.

b.  Norfolk, its managers, agents and employees and all persons interested in the Property are hereby authorized and directed to immediately pay and deliver to the Receiver possession and control of the Property and the Receipts.

c.  Norfolk and its managers, agents and employees and all persons interested in the Property are hereby authorized and directed to immediately pay and deliver to the Receiver all Receipts that have been received by them, are being held by them, or which come into their possession.

d.  In particular, all account debtors and guests of the Property are hereby directed to pay Receipts to the Receiver and specifically shall not pay Receipts to Norfolk or its owners or agents.

e.  The Receiver is authorized to (i) pay all the operating expenses of the Property incurred in the ordinary course of business in the operation of the Property, including payments to the Bank under the Loan Documents and to pay taxes owing, Property expenses, utilities, taxes, wages, the Bank's debt, and other obligations needed in order to protect, care for, and maintain the Property; (ii) prepare and operate the Property pursuant to a budget acceptable to the Bank; (iii) fulfill the obligations of Norfolk with regard to any existing agreements; and (iv) prevent possible waste and loss of income; *provided however*, that the Receiver shall not be permitted to make capital expenditures in excess of an aggregate of $2,000.00 per month for the Property without providing written notice to Bank and Norfolk and

obtaining either written approval of the Bank or an order of this Court after notice to the Bank and Norfolk and an opportunity for a hearing.

f. The Receiver is authorized to take control of all bank accounts of Norfolk with respect to the Property, and to open a bank account or accounts in the name of the Receiver and deposit the Receipts and any proceeds of the Property in said account(s).  Receiver is further authorized to redirect merchant credit card deposits and payments to the bank accounts controlled and established by the Receiver.

6.  **Additional Duties of Receiver**.  In addition to the other duties set forth in this Order, the Receiver shall:

a.  perform an accounting of the Receipts generated from the Property and an accounting of all costs and expenses in connection therewith.

b.  prepare monthly operating reports and balance sheets with respect to the Property in a form satisfactory to the Bank (the "Reports").  Every thirty days from the date of this Order, the Receiver shall file the Reports with the Court and provide copies of the Reports to the Bank, and Norfolk and its owners.

c.  keep complete and accurate records of all funds coming into Receiver's possession, and of all costs, expenses, and disbursements made or incurred by Receiver, and make the accountings and reports set forth in this Order;

d.  Open all mail addressed to Norfolk, its agents, servants, employees, representatives, or all persons or entities acting under or in concert with Norfolk regarding the Property.

7.  **Receiver Compensation.**  The Receiver shall be compensated on a monthly basis from the gross monthly Receipts of the Property in an amount that is the greater

4

of: (a) 3% of Gross Receipts from the Property each month, or (b) $4500.00 each month (the "Receiver's Fee"). The Receiver's Fee shall be paid from the cash generated by the Property so long as the net cash received by the Receiver and on hand each month is sufficient to pay the current necessary bills (as determined by the Receiver) plus the Receiver's Fee.

8. **Licenses.** To the extent permissible by law, the Receiver is authorized to utilize all existing licenses and permits of Norfolk with respect to the Property, including any liquor, restaurant, guest house, motel, inn, and hotel licenses or permits, and to continue using the name, website and other tangible and intangible personal property of Norfolk in conjunction with its operation of the Property. The Receiver shall maintain property, casualty, and dram shop insurance in amounts and in such form as is satisfactory to the Bank.

9. **Advances.** To the extent that the Receipts are insufficient to pay the expenses and/or capital expenditures (authorized to be expended in accordance with this Order) with respect to the Property, the Bank may, but shall not be obligated to, advance funds to pay such expenditures. If the Bank advances funds to pay such expenditures, all sums so advanced or paid by the Bank shall be prior and superior to any and all other liens and encumbrances against or relating to the Property, and by advancing such funds, The Bank shall not be considered an owner or operator of the Property. Notwithstanding anything contained herein to the contrary, neither the Bank nor the Receiver shall in any manner be obligated to pay for such expenditures.

10. **Books, records, and assistance.** Norfolk and its managers, agents and employees and all persons interested in Norfolk and/or the Property are hereby directed

5

to assist the Receiver by, *inter alia*, making available to the Receiver all books and records relating to the Property wherever located, including any information contained on computer disk, magnetic tape or other medium, and otherwise cooperate with the Receiver to the fullest extent practicable in the fulfillment of the Receiver's duties, including, but not limited to, making all information available to the Receiver necessary to perform an accounting; executing all transfer cards and account assignments in favor of the Receiver as may be necessary to give the Receiver exclusive signatory authority and control over all of Norfolk's deposit accounts with respect to the Property, and otherwise cooperate with the Receiver to the fullest extent practicable in the fulfillment of the Receiver's duties.  No depository institution (other than the Bank) where Norfolk has deposited funds shall be permitted to offset such funds without first obtaining an order of this Court on notice to the Receiver, the Bank, Norfolk and its owners, and after an opportunity for a hearing.

11. **Contracts.**  The Receiver is authorized to enter into leases, contracts, and agreements to operate the Property.  The Receiver may seek Court approval to reject / terminate any Contracts.

12. **The Sale.**   The Receiver shall engage a broker to implement the Sale, and the broker and the terms and conditions of such engagement shall be acceptable to the Bank.  The Receiver and the broker shall periodically apprise the Bank, Norfolk, and its owners of all efforts to market the Property.  Any offers to purchase the Property shall be presented to the Bank and Norfolk and no offers, including for less than the amount of the Debt (as defined in the Complaint), shall be accepted by the Receiver without Court approval.

6

13. **Further Powers.** The Receiver shall have such other and further powers as the Court by its order from time to time may grant and direct.

14. **Inspections**.  The Bank and its agents shall have the right to inspect the Property and the books and records of Receiver at any reasonable time upon reasonable notice.

15. **Utility Companies.**  Each utility company or entity providing service to the Property shall be prohibited from demanding that Receiver deposit additional funds in advance or satisfy obligations incurred prior to the date of this Order to maintain or secure such service.  Each utility company or entity providing service to the Property may apply any pre-receivership deposits against amounts owed to satisfy obligations incurred prior to the date of this Order.  Any amount of pre-receivership deposits in excess of pre-receivership obligations shall be transferred to the Receiver.

16. **Professionals.**  The Receiver is authorized to engage professionals to assist him in performing his duties hereunder, including engaging property managers or other professionals needed to properly effect this Order.

17. **Insurance.**  All insurance companies providing insurance to Norfolk with respect to the Property and/or the Property shall add the Receiver as a named insured and/or loss payee under such policies.  Defendants, and their property managers, employees, insurance agents and insurance carriers:  (a) are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property without further order of this Court, and (b) shall cooperate with the Receiver to keep appropriate insurance coverage in place, and to take such steps as are necessary to ensure the Receiver is added as an additional named insured and that the Bank is

7

continuously a lost payee under all insurance policies.

18. **Receiver Bond.**  The Receiver shall make, execute and deliver to the Clerk of this Court a bond as provided by law in the sum of $50,000 and upon approval of this bond, this Order shall take effect immediately.

19. **Hearing.**  The Hearing set for Monday, September 28, 2015, at 10:00 a.m. (Filing No. 20) is cancelled.

Dated this 16th day of September, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

# EXHIBIT A – LEGAL DESCRIPTION

**Tract I:** A tract of land in the SW 1/4 SW 1/4 of Section 27, Township 24 North, Range 1 West of the 6th P.M., in the City of Norfolk, in Madison County, Nebraska, which is more particularly described as follows: Beginning at a point which is 200 feet East and 90 feet North of the Southwest corner of said Section 27; thence East 17.9 feet; thence North 83.5 feet; thence East 264.2 feet; thence North 374.1 feet; thence West 334.7 feet; thence South 50.1 feet; thence West 114 feet to the Easterly right-of-way line of U.S. Highway #81; thence South 148.7 feet; thence East 17 feet; thence South 105 feet; thence East 150.1 feet; thence South 150.1 feet to the point of beginning, excluding that part acquired by the State for Highway purposes recorded in the Madison County Register of Deeds Office in M87-6, Page 730; Together with a perpetual easement and rights of ingress and egress in, over and across all drives and driveways now or hereafter existing on the premises and on the balance of said SW1/4 SW1/4 SW1/4 of said Section 27.

**Tract II:** A tract of land lying wholly in the SW 1/4 SW 1/4 of Section 27, Township 24 North, Range 1 West of the 6th P.M., in the City of Norfolk, in Madison County, Nebraska, which is more particularly described as follows: Beginning at a point which is 264 feet North and 40 feet West of the Southeast corner of said SW 1/4 SW 1/4 SW 1/4 of said Section 27; thence North 182.9 feet; thence West 138.8 feet; thence South 182.2 feet; thence East 138.5 feet to the point of beginning.

Also known as: 1201 S 13th St, Norfolk, NE

1.2    "**Mortgaged Property**" means all of the following, whether now owned or existing or hereafter acquired by Trustor, wherever located:  all the real property legally described in **Exhibit A** attached hereto (the "Land"), together with all buildings, structures, standing timber, timber to be cut, fixtures, furnishings, inventory, equipment, machinery, apparatus, appliances, and articles of personal property of every kind and nature whatsoever, (and all proceeds and products thereof) now or hereafter located on the Land, or any part thereof, used in connection with the Land and improvements; all materials, contracts, drawings and personal property *relating to any construction on the Land*; and all other improvements now or hereafter constructed, affixed or located thereon (the "**Improvements**") (the Land and the Improvements collectively the "**Premises**"); TOGETHER with any and all easements, rights-of-way, licenses, privileges, and appurtenances thereto, and any and all leases or other agreements for the use or occupancy of the Premises, and all the rents, issues, profits or any proceeds therefrom and all security deposits and any guaranty of a tenant's obligations thereunder (collectively the "**Rents**"); all awards as a result of condemnation, eminent domain or other decrease in value of the Premises and all insurance and other proceeds of the Premises; and any and all rights of Trustor in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements and general intangibles relating to any of the Mortgaged Property, *including, without limitation, income and profits derived from the sale of the Mortgaged Property or the operation of any business on the Premises or attributable to services that occur or are provided on the Premises or generated from the use and operation of the Mortgaged Property.*

## EXHIBIT B - DEFINITION OF RECEIPTS

"Receipts" means all funds received from account debtors and guests who stay at the Collateral and who are obligated to pay for their rooms, food, drink and other amenities, including all form of rents, fees, payments, income, profits, revenues, credit card payments and receipts, cash, checks, payment instruments and intangibles, charges, proceeds, accounts, accounts receivable, receipts, refunds, rebates, credits, rights to receive value, and any form of cash received or to be received with respect to, or as a result of, the Collateral.